## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RICHARD LABIT** | **CIVIL ACTION NO. 6:11-cv-0574** |
| **LA. DOC #195223** | |
| **VS.** | **SECTION P** |
| | **JUDGE DOHERTY** |
| **ROBIN LANDRY, ET AL.** | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Richard Labit filed the instant action on April 8, 2011, attempting

to allege an unconstitutional conditions of confinement claim and a claim under the

Americans with Disabilities Act.  Plaintiff is an inmate in the custody of the Louisiana

Department of Public Safety and Corrections.  He is currently incarcerated at the David

Wade Corrections Center in Homer, Louisiana.  However, plaintiff complains of the

conditions of his confinement and events which occurred while he was incarcerated at the

St. Mary Parish Jail (SMPJ) in Franklin, Louisiana from November 7, 2009 until he was

transferred to another facility ten months later.  In his Complaint and Amended

Complaints, plaintiff names SMPJ Warden Robin Landry, Nurse Kathy Thornton, former

St. Mary Parish Sheriff David Naquin, Assistant Wardens Hamilton and Randall, Chief of

Security Gus Guillory, and the St. Mary Parish Police Jury.  He  prays for damages and

declaratory relief.

This matter has been referred to the undersigned for review, report, and

recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing

orders of the Court.  For the following reasons it is recommended that the complaint be

**DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

## PROCEDURAL AND FACTUAL BACKGROUND

In his original Complaint, plaintiff named only SMPJ Warden Robin Landry, Nurse Kathy Thornton as defendants.  He alleges that he is an amputee who lost his leg as a result of an automobile accident that occurred on April 28, 2008.  On November 7, 2009, plaintiff began a ten month period of  incarceration at the SMPJ. Plaintiff alleges that  his assigned cell lacked "any accommodations for the handicapped or disabled, i.e., handholds, accessible sink/toilet height, etc. . . ."  Plaintiff further alleges that he was denied the use of crutches or a wheelchair.

Plaintiff alleges that on November 7, 2009, he asked Warden Landry that he be permitted  to use his personal wheelchair if the jail could not provide him one.  However, his request was denied as violative of prison policy.

On November 19, 2009, plaintiff alleges that  he told Nurse Thornton that he was having difficulty ambulating in the jail and that he had suffered repeated falls, and accordingly was in need of crutches, a wheelchair or some type of assistance.  However, Nurse Thornton "summarily" denied his request.

Plaintiff continued to have difficulty ambulating and continued to suffer falls. Moreover, on July 23, 2010 and July 28, 2010, he alleges that he sustained injuries in a fall which were serious enough to warrant his transportation to the hospital for treatment.

2

Plaintiff states that he has filed civil suits in the Sixteenth Judicial District Court for St. Mary Parish against the St. Mary Parish Police Jury and other defendants on March 30, 2010 and March 31, 2010, respectively, under Docket Numbers 121479 and 121542 . These suits were pending at the time plaintiff filed this complaint. He also claims that his prison grievances filed on March 4, 2010, April 10, 2010 and April 12, 2010 were ignored.

On July 21, 2011, plaintiff was directed to amend his complaint.  Among other things, plaintiff was  directed to  allege specific facts in support of his claims for relief, including allegations as to how each named defendant violated his rights.  He was also specifically directed to describe the injuries sustained as a result of each alleged violation and the dates each injury was sustained.  Moreover, plaintiff was directed to state whether he was allowed to use a prosthetic device during the period he was incarcerated at the SMPJ, whether he required crutches or a wheelchair before his incarceration at the SMPJ and whether he requires crutches or a wheelchair at the facility where he is now incarcerated.  He was also directed to describe the nature of the claims filed in the actions pending in the Sixteenth Judicial District Court and the defendants named in those suits.

In response, plaintiff filed an Amended Complaint to which he attached several exhibits[1], and in which he names former St. Mary Parish Sheriff David Naquin, Assistant

---

[1]The following exhibits were submitted: (1) A Disciplinary Report charging plaintiff with defiance as a result of an incident that occurred on November 19, 2009.  According to the report, Nurse Thornton went to plaintiff's cell to address his sick call complaint. Once his needs were addressed, plaintiff inquired about alternative housing. Thornton explained that she had attempted to transfer him to

Wardens Hamilton and Randall, SMPJ Chief of Security Gus Guillory, and the St. Mary

Parish Police Jury as additional defendants.  With the exception of the Chief of Security,

Gus Guillory, plaintiff makes no allegations against any of the other newly named

defendants.

In his Amended Complaint, plaintiff alleges that while at the SMPJ he was housed

in the "segregation unit" for his own protection and because "it was the only place to put

me because of my disability."  The cell, however, "had no handicap accommodations."

He complains that the defendants refused his written request that he be transferred from

the SMPJ to a jail facility in Franklin, Louisiana located on the 7th Floor of the St. Mary

Parish Courthouse where other medical needy offenders were housed.  The record reveals

that upon plaintiff's incarceration, Nurse Thornton attempted to have plaintiff transferred

---

the 7th  floor but her request was denied based upon the seriousness of plaintiff's pending criminal
charges; (2) An Inmate Grievance dated March 4, 2010 in which plaintiff complained that he was being
discriminated against by being placed in "lock down" because of his disability; (3) A Disciplinary Report
charging plaintiff with aggravated disobedience as a result of an incident that occurred on April 13, 2010.
According to the report, plaintiff was escorted to the medical department by Deputy Jordan. While in
Nurse Hamilton's office, plaintiff began making comments about the medical staff and raised his voice to
Deputy Jordan. When Nurse Thornton appeared in the doorway and asked plaintiff to stop, he told her to
return to her office and handle her business; (4) An Inmate Sick Call Sheet dated April 10, 2010 in which
plaintiff complained that he "twisted" his foot and bruised his toe when he leaned over to get his food
tray and fell from his bed. Plaintiff complained that hand rails were needed; (5) An Inmate Grievance
dated April 12, 2010 in which plaintiff claimed that his previous sick call concerning his toe and foot and
a rash were being ignored; (6) two Inmate Grievances dated April 12, 2010 which accused Nurse
Thornton of refusing to examine plaintiff concerning his foot and rash; (7) An Inmate Incident Report
dated July 23, 2010 regarding the injuries plaintiff claimed as a result of slipping from the water cooler;
(8) A Notice of Service in Civil Action entitled *Richard A. Labit v. Denise Hamilton, et al.,* Docket No.
121542 of the 16th Judicial District Court, for St. Mary Parish showing service on Warden Robyn Landry
on March 25, 2010; (9) A Notice of Service in Civil Action entitled *Richard A. Labit v. St. Mary Parish
Police Jury, et al.,* Docket No. 121479 of the 16th Judicial District Court for St. Mary Parish showing
service on Warden Robyn Landry on March 19, 2010.

to that facility, but that because of the serious nature of plaintiff's pending charges, her request was denied, and accordingly, plaintiff could not be transferred to that facility. [rec. doc. 5-1, pg. 1].

Plaintiff states that prior to his incarceration he was "wheelchair bound" for over three years, but admits that prior to his incarceration, he was outfitted with a prosthetic leg, which he was permitted to wear during his incarceration.  However, plaintiff alleges that he only received the prosthesis a short period of time prior to his arrest and accordingly, at the time of incarceration, he was not yet proficient in its use.  Plaintiff concedes that he was initially provided crutches by the head nurse – presumably Nurse Thornton – but that they were later taken away because "crutches were not allowed in seg[regation]."

Plaintiff alleges that while attempting to learn how to use his prosthetic, he fell many times.  He concedes, however, that after approximately two and one half weeks of confinement, his attempts to stand and learn how to use the prosthesis were successful and he was "finally able to stand and take very few steps."   He claims that  he showed the nurse bruises he sustained in the falls, and requested the return of his crutches.  However, she advised him to stay in bed.  Since he was still not allowed to use crutches plaintiff alleges that he was forced by this circumstance "to amble around on my buttock to use the restroom and get my meals."  Nevertheless, faced with this hardship plaintiff forced himself to learn how to use the prosthetic leg despite the fact that this activity "added pain to my nub and my leg."

With respect the July 23, 2010 and July 28, 2010 falls[2] which allegedly caused injuries which were serious enough to warrant plaintiff's transportation to the hospital for treatment, plaintiff added the following additional facts.  With respect to the former fall, plaintiff states that he was using the telephone when plaintiff attempted to sit on the water cooler as he had seen other inmates do when they made telephone calls.  However, the water cooler slid from behind plaintiff and he fell to the floor on his tail bone, for which plaintiff was taken to the hospital for some unspecified course of treatment.

With respect to the latter, plaintiff alleges that he fell while walking to speak to his mental health physician.  At the time he was handcuffed "with belt", but was not wearing leg shackles.  Plaintiff does not provide further details as to the injury he claims to have sustained in the fall, nor does he provide further details of the treatment he received at the hospital.

Plaintiff claims that he now has chronic back pain from these July 2010 falls.  He further claims that falls he experienced during his incarceration from November 7, 2009 to March 10, 2010 could have been avoided if the head nurse, presumably Nurse Thornton, had allowed him to use crutches while he was learning to use his prosthesis.[3]

---

[2]In his original Complaint plaintiff alleges that the second fall occurred on July 28, 2010. However, in his Amended Complaint, plaintiff alleges that the fall occurred on July 26, 2010.  For the sake of uniformity, the undersigned will refer to this fall as having occurred on July 28, 2010.

[3]The instant action was not filed until April 8, 2011.  Accordingly, any claim which plaintiff may have had with respect to these incidents is prescribed as the statute of limitations for a § 1983 action is one-year. *Wilson v. Garcia*, 471 U.S. 261, 279-280, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1984); *Lavellee v. Listi*, 611 F.2d 1129 (5th Cir. 1980); *Elzy v. Roberson*, 868 F.2d 793, 794 (5th Cir. 1989).  The undersigned therefore focuses solely on the July 2010 falls herein.

Plaintiff additionally complains that Nurse Thornton made his stay at the St. Mary Parish Jail even "harder and more painful because of arguments we had."  Furthermore, he claims that some sick calls went unanswered and "on many occasions" over the counter pain medication was not dispensed. In sum, plaintiff  claims that "[t]he only thing in this case that can really be proven is the fact that I was housed in an unsuitable environment . . . ."

Plaintiff provides no further details about the pending civil actions filed in St. Mary Parish, except to allege that he "got no assistance from the Clerk of Court" and that is the reason he filed the instant Complaint. He adds that he does not feel he will get a "fair judgment" in the State court suits.

In his Amended Complaint, plaintiff adds an additional claim against the "Head of Security", presumably Gus Guillory, that on some unspecified date, Guillory slammed "the swing door on my cell on me as I was half way through it."  As a result, plaintiff alleges that he suffered swelling and abrasions. Plaintiff complains that although the Nurse filled out paperwork, she did not photograph the injury.  Plaintiff alleges that he filed a grievance with respect to this incident, but that he received no response.[4]

Plaintiff concludes his Amended Complaint by alleging that (1) his Eighth Amendment rights were violated; (2) he was discriminated against by being placed in segregation because of his disability; (3) he was physically abused by Chief of Security

---

[4]Plaintiff has not submitted the grievance for this Court's review.

Gus Guillory slamming the door on him; and, (4) that his requests for grievance forms

and sick call sheets went unanswered "for days at a time."

## LAW AND ANALYSIS

**Screening**

When a prisoner files suit against a governmental entity or an officer or employee

of a governmental entity, under 28 U.S.C. § 1915A, the court is obligated to evaluate the

complaint and dismiss it without service of process, if the complaint is frivolous,

malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief

from a defendant who is immune from such relief. 28 U.S.C. § 1915A; *Ruiz v. United

States*, 160 F.3d 273, 274 (5th Cir. 1998); *see also* 42 U.S.C. § 1997e(c)(1) (directing the

district court to dismiss, on its own motion "any action brought with respect to prison

conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any

jail, prison, or other correctional facility if the court is satisfied that the action is

frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks

monetary relief from a defendant who is immune from such relief."  The screening

provisions of § 1915A "appl[y] regardless of whether the plaintiff has paid a filing fee or

is proceeding *in forma pauperis*." *Ruiz*, 160 F.3d at  274.

A claim is frivolous if it lacks an arguable basis in law or in fact.  *Gonzalez v.

Wyatt*, 157 F.3d 1016, 1019 (5th Cir. 1998) *citing Siglar v. Hightower,* 112 F.3d 191, 193

(5th Cir. 1997).  A claim has no arguable basis in law if it is based on an indisputably

meritless legal theory. *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Id.*   A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. *Jones v. Bock*, 549 U.S. 199, 215 (2007); *see also Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).  The plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Green v. Revel*, 2011 WL 165453, *1 (5th Cir. 2011) *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Plaintiff's original Complaint did not provide sufficient facts to support his claims. Accordingly, plaintiff was afforded the opportunity to file an Amended Complaint. Accepting all of plaintiff's allegations contained in both his original and Amended Complaints as true, for the reasons set forth below, the undersigned concludes that plaintiff has failed to state claims for which relief may be granted.

## I.  Constitutional Claim under 42 U.S.S. § 1983

Apparently, plaintiff was a pre-trial detainee while he was incarcerated at the St. Mary Parish Jail.  Claims of pre-trial detainees are considered under the Fourteenth Amendment due process clause rather than the Eighth Amendment.  *Hare v. City of Corinth,* 74 F.3d 633, 639 (5th Cir. 1996).   When considering claims asserted by pre-trial detainees,  the applicable standard depends upon whether the claim is directed to a

general "condition of confinement" or to an "episodic act or omission." *Scott v. Moore,*

114 F.3d 51, 53 (5th Cir. 1997) *quoting Hare,* 74 F.3d at 644.

In an episodic act or omission case, "the complained-of harm is a particular act or

omission of one or more officials," where "an actor usually is interposed between the

detainee and the municipality, such that the detainee complains first of a particular act of,

or omission by, the actor and then points derivatively to . . . the municipality that

permitted or caused the act or omission." *Id*.

A prison official's constitutional liability to pre-trial detainees for episodic acts or

omissions is measured by the standard of subjective deliberate indifference enunciated by

the United States Supreme Court in *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct.

1970, 1977 (1994).  *Hare*, 74 F.3d at 643.  The plaintiff must show that he suffered  a

sufficiently serious deprivation and deliberate indifference by prison officials. *Hare*, 74

F.3d at 643 and 650.  This is the same standard applicable to convicted prisoners under

the Eighth Amendment. *Sibley v. LeMaire,* 184 F.3d 481, 489 (5th Cir. 1999).

Deliberate indifference encompasses only unnecessary and wanton infliction of

pain repugnant to the conscience of mankind; thus, the test is "subjective recklessness" as

used in the criminal law.  *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *Farmer,*

114 S.Ct. at 1980.  Deliberate indifference requires a showing that the prison official

"knows of and disregards an excessive risk to inmate health or safety; the official must

both be aware of facts from which the inference could be drawn that a substantial risk of

10

serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S.  at 837; *Newton*, 133 F.3d at 308.

"Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm." *Mace v. City of Palestine*, 333 F.3d 621, 626 (5th Cir. 2003).  "[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm"; negligence and even gross negligence does not implicate the Constitution and does not provide a basis for a § 1983 claim.  *Thompson*, 245 F.3d at 459; *Farmer,* 114 S.Ct.  at 1978; *Sibley*, 184 F.3d at 489; *see also Doe v.  Dallas Independent School District*, 153 F.3d 211, 219 (5th Cir. 1998) (actions which are merely inept, erroneous or negligent do not satisfy the high standard of deliberate indifference.).

Thus, "the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).  Furthermore, deliberate indifference cannot be proven through cumulative group acts, but, rather, each defendant must independently be shown to have acted with subjective deliberate indifference.  *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999).

Similarly, with respect to medical care claims, the medical care must be "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *see also Sibley*

11

*v. LeMaire,* 184 F.3d 481, 489 (5th Cir. 1999).  Negligence and even medical malpractice

do not implicate the Constitution and do not provide a basis for a §1983 claim.  *Stewart,*

174 F.3d at 534 *citing Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993), and

*Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982); *Varnado*, 920 F.2d at 321.

     "A 'condition of confinement' case is a 'constitutional attack on general

conditions, practices, rules, or restrictions of pretrial confinement.'" *Scott,* 114 F.3d at 53

*quoting Hare,* 74 F.3d at 644.  With respect to the claims falling into the category of

"conditions of confinement," the court must decide whether the condition is imposed for

the purpose of punishment or whether it is incident to some legitimate non-punitive

governmental purpose and whether it is excessive in relation to that purpose.  *Bell*, 441

U.S. at 538, 99 S.Ct. at  1873-74.  A constitutional violation exists only if it appears that

the complained of conditions of confinement are not reasonably related to a legitimate,

non-punitive governmental objective. *See Hare*, 74 F.3d at 640 *citing Bell*, 441 U.S. at

538-39, 99 S.Ct. at 1873-74); *Scott*, 114 F.3d at 53 *citing Hare*. However, for all

detainees,  " '[t]here is, of course, a *de minimis* level of imposition with which the

Constitution is not concerned.' "  *Bell,* 441 U.S. at 539 n. 21, 99 S.Ct. at  1874 n. 21

*quoting Ingraham v. Wright*, 430 U.S. at 674, 97 S.Ct. at 1414.

     While the *Bell* Court did not detail the precise extent of the legitimate

governmental interests that may justify any particular condition, the Court did specifically

recognize that "the effective management of the detention facility . . . is a valid objective

that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment." *Id*.   This recognition conforms with the Supreme Court's repeated admonition that it is not the role of federal courts to second guess prison officials or their decisions regarding effective management, as such considerations are peculiarly within the province and professional expertise of corrections officials.  *See Bell,* 99 S.Ct. 1874-75 and 1875 at fn. 23; *Rhodes,* 101 S.Ct. at 2401-02; *Hudson v. McMilliam*, 112 S.Ct. 995, 999 (1992).

### Conditions of Confinement Claim

Read liberally, plaintiff complains that certain conditions of his confinement – namely his confinement in segregation, the fact that the segregation cell lacked "any accommodations for the handicapped or disabled, i.e. handholds, accessible sink/toilet height, etc.",  and, the prison policy prohibiting the possession of canes, crutches, or wheel chairs in segregation – violated plaintiff's right to due process.  However, a due process violation exists only if the complained of conditions are not reasonably related to a legitimate non-punitive governmental objective. *Hare, Bell, Scott, supra*.

Based upon the information supplied by plaintiff and the entire record before this Court, it appears that plaintiff was confined in the segregation unit for his own protection in light of his disability, not to discriminate against, or punish the plaintiff.  Moreover, prison policy prohibited the possession of crutches in the segregation unit.  Further, given the charges pending against plaintiff, prison policy prohibited plaintiff's transfer to the courthouse facility which petitioner requested.  Accordingly, plaintiff has not shown that

his confinement in the segregation unit was discriminatory or punitive, or that the enforcement of the policies mentioned above was in any way a punitive measure designed to inflict punishment upon him.

Rather, it appears adherence to these policies served legitimate prison purposes, to provide protection to handicapped inmates, to restrict the possession and use of items that may be used as weapons in the segregation unit, and to provide secure housing for inmates facing serious charges for the protection of facility personnel and the public. Stated differently, because the challenged policies appear to be related to effective prison management, a valid prison objective, any inference that such condition is intended as punishment is dispelled.  These policy choices, instituted to effectively manage the SMPJ, are peculiarly within the province and professional expertise of the defendants and, as such, are not decisions which this Court should second guess.

In short, since plaintiff has not shown that his confinement in segregation was discriminatory or punitive in nature, and, since the regulations which were enforced served legitimate prison purposes, plaintiff has failed to establish a violation of due process, and, thus, has failed to state a claim for which relief may be granted.

***Episodic Act Claim***

To the extent that plaintiff's allegations may be construed as asserting an episodic act case, plaintiff has failed to demonstrate that any named defendant was deliberately indifferent to a substantial risk of harm.

14

Here, plaintiff has failed to demonstrate that he was exposed to a substantial risk of serious harm or that the defendants were deliberately indifferent to any such risk. Plaintiff was not denied all means of locomotion.  To the contrary, plaintiff entered into custody with his prosthesis, and it was not unreasonable for the jail authorities to conclude that plaintiff could therefore ambulate with the prosthesis alone. While plaintiff suffered some falls, it is reasonable to conclude that persons ambulating with a prosthetic, including those experienced in its use, will occasionally fall.

Thus, while the defendants perhaps should have perceived that plaintiff was not entirely proficient in the use of his prosthesis, and therefore was therefore in need of an additional device, their failure to draw this inference is insufficient to show deliberate indifference. *Domino, Farmer, supra*.  At best, the defendant's response to plaintiff's circumstance was negligent.  However, negligence, even gross negligence, does not constitute or establish deliberate indifference.  *Thompson*; *Farmer*; *Sibley*; *Doe, supra*.

Furthermore, in order to prevail on his civil rights claim, the plaintiff must demonstrate not only that he was exposed to a substantial risk of serious harm, but that he actually suffered some harm that was more than *de minimis*.  *See Gomez v.  Chandler*, 163 F.3d 921 (5th Cir. 1999); *Jackson v. Culbertson,* 984 F.2d 699 (5th Cir. 1993); *Siglar v. Hightower,* 112 F.3d 191, 193-94  (5th Cir.  1997); *Jones v. Greninger,* 188 F.3d 322, 326 (5th Cir. 2000); *Alexander v. Tippah County, Miss*, 351 F.3d 351, 630-31 (5th Cir. 2003); *Luong v. Halt*, 979 F.Supp. 481, 486 (N .D.Tex.1997) *See also Hudson v. McMillian*,  503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

Plaintiff was in custody at the SMPJ for a period of approximately 10 months, from November 2009 through September 2010.  He was specifically directed to describe the injuries he sustained while at the facility. [*See* rec. doc. 4].  By Amended Complaint, plaintiff merely alleged that he "fell many, many time[s], bruising [himself] from head to toe . . . ."  With respect to the July 23, 2010 and July 28, 2010 falls, plaintiff alleges only that with respect to the former he experienced pain in his tail-bone, and has alleged no specific injury resulting from the latter.  He also claims to suffer "chronic back pain" as a result of these falls.  Other than being seen by a physician at the hospital following these incidents, plaintiff does not allege any additional treatment was required for this alleged condition.  In sum, plaintiff's complaint alleges bruising, tail bone pain, and "chronic", but unspecified, back pain.

The Fifth Circuit has not defined what constitutes a *de minimis* injury, as opposed to an injury of constitutional significance.  However, the Northern District of Texas has articulated that a *de minimis* injury "is not a sore muscle, an aching back, a scratch, an abrasion, a bruise. . . . ." *Luong v.  Hatt*, 979 F.Supp.  481, 486 (N.D. Tex. 1997).

The undersigned finds this reasoning persuasive.  Accordingly, the undersigned finds that plaintiff's alleged complaints following what appear to be minor accidents, which, other than requiring an initial treatment, appear to be treatable with over the counter remedies, do not rise above the realm of *de minimis* injury, and as such have no constitutional significance.

16

***Delayed Medical Response***

To the extent that plaintiff asserts a claim based on delayed medical care because his sick call sheets went unanswered "for days at a time", that claim is likewise without merit.  In order to set forth a viable constitutional claim for delayed medical treatment, the plaintiff must show that the named defendants acted with deliberate indifference and substantial harm was occasioned by the delay.  *Mendoza v. Lynaugh*, 989 F.2d 191, 193-95 (5th Cir. 1993);  *Wesson v.  Oglesby,* 910 F.2d 278, 284 (5th  Cir. 1990).  There is nothing in the record indicating that plaintiff suffered substantial harm as a result of any delay in responding to his sick call requests.  To the contrary, plaintiff's allegations reveal that he was provided with prompt care following his July 23, 2010 and July 28, 2010 falls.

Finally, as discussed above, the record fails to demonstrate that Nurse Thornton or any other prison medical personnel acted with deliberate indifference toward plaintiff's medical needs.

***Claim against Chief of Security Gus Guillory***

These same reasons require dismissal of plaintiff's claim against Chief of Security Gus Guillory.  The record fails to demonstrate that Guillory acted with deliberate indifference toward plaintiff.  Moreover, plaintiff's alleged injury, foot swelling and abrasions, do not constitute more than *de minimis* injury.

17

*Grievance Responses*

To the extent that plaintiff complains that his requests for grievance forms went unanswered "for days at a time", that claim is without merit.  Prison officials are not obligated to "properly" respond to grievances because "there is no inherent constitutional right to an effective prison grievance procedure."  *Overholt v. Unibase,* 221 F.3d 1335, *3 (6th Cir. 2000) *citing  Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991).  *See also Carpenter v. Wilkinson*, 205 F.3d 1339, *2 (6th Cir. 2000) *citing Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996) and *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994).

Accordingly, this court has held that "[i]nmates 'do not have a constitutionally protected right to a grievance procedure.'" *Oladipupo v. Austin*, 104 F. Supp.2d 626, 638 (W.D. La. 2000) *citing Brown v. Dodson,* 863 F. Supp. 284, 285 (W.D. Va.1994).  Hence, to the extent plaintiff alleges that prison officials did not properly or timely respond to his grievances, that claim does not rise to the level of a constitutional violation.[5]

*Conclusion*

For these reasons, set forth above plaintiff's Constitutional Claims should be dismissed for failing to state claims upon which relief may be granted.

---

[5]When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's failure to properly comply with grievance procedures. *See Flick,* 932 F.2d at 729; *Oladipupo,* 104 F. Supp.2d at 638. Plaintiff has taken advantage of his right to petition the courts for redress of his grievance.

## II.  ADA Claim

In his original complaint, plaintiff also alleged, in a general and conclusory fashion, that during the period he was detained at the SMPJ, his assigned cell lacked "any accommodations for the handicapped or disabled, i.e., handholds, accessible sink/toilet height, etc . . . ."  At the conclusion of his Complaint, he merely cited the Americans With Disabilities Act or ADA, without any further factual support for any claim under the statute.

By Order dated July 20, 2011, plaintiff was specifically directed to amend his complaint to provide specific factual allegations in support of his claims. [rec. doc. 4]. However, in his Amended Complaint, plaintiff made no mention of the ADA, nor did he elaborate on the claim he made in his original complaint, other than conclusorily alleging that he was discriminated against by being placed in the segregation unit and his statement that "[t]he only thing in this case that can really be proven is the fact that I was housed in an unsuitable environment . . . ." Thus, plaintiff apparently contends that the defendants violated the ADA by housing him in the segregation unit which lacked handicapped accommodations.  Nowhere does plaintiff allege that he was denied the benefits of, or was excluded from, participation in any jail service, program or activity based on his disability.

The Supreme Court has recognized that state prisoners may bring claims against their jailors for disability discrimination under Title II of the ADA.  *Pennsylvania Dep't of*

*Corrections v. Yeskey*, 524 U.S. 206, 209–10 (1998).

To the extent that plaintiff seeks to hold the defendants individually liable under the ADA, that claim must be dismissed.  Because the term "public entity" in Title II does not include individuals, individual defendants cannot be held personally liable for violations of Title II of the ADA.  *Perez v. Sheriff of Tangipahoa,* 2011 WL 1226482, *11 (E.D. La. 2011) *citing Walker v. Snyder*, 213 F.3d 344, 347 (7th Cir. 2000), *abrogated on other grounds by Bd. of Trustees v. Garrett*, 531 U.S. 356, 374 n. 9 (2001), as stated in *Bruggeman ex rel. Bruggeman v. Blagojevich*, 324 F.3d 906, 912 (7th Cir. 2003), *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n. 8 (8th Cir. 1999), *Mitchell v. Mass. Dep't of Correction*, 190 F.Supp.2d 204, 211(D. Mass. 2002), *Washington v. Davis*, 2001 WL 1287125, *3 (E.D .La. 2001), *Sims v. Tester*, 2001 WL 627600, *1 (N.D. Tex. 2001) and *Berthelot v. Stadler*, 2000 WL 1568224, *1 (E.D. La. 2000); *Douglas v. Sheriff Gusman*, 567 F.Supp.2d 877, 888 (E.D. La. 2008).

To the extent that plaintiff asserts an official capacity claim against any defendant under the ADA, that claim likewise must be dismissed for failure to state a claim upon which relief may be granted.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Hunnicutt v. Watkin,* 2010 WL 1997115, *2 (N.D. Tex. 2010) *citing* 42

U.S.C. § 12132 and *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000).

A "public entity" is broadly defined as "(A) any State or local government"; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Corporation, and any commuter authority." *Id. citing* § 12131(1).

"The language of Title II generally tracks the language of Section 504 of the Rehabilitation Act of 1973; in fact, the statute specifically provides that 'the remedies, procedures and rights' available under Section 504 shall be the same as those available under Title II." *Hunnicutt*, 2010 WL 19971115 at *2 *citing* § 12133 and *Hainze*, 207 F.3d at 799.  "Under both the ADA and the Rehabilitation Act, a plaintiff must demonstrate that: (1) he is a qualified individual with a disability; (2) he was excluded from participation in, or denied benefits of, services, programs, or activities by a public entity; and (3) that such exclusion, denial of benefits, or discrimination was by reason of his disability." *Hunnicutt*, 2010 WL 19971115 at *2 *citing Lightbourn v. County of El* Paso, 118 F.3d 421, 428 (5th Cir. 1997).

Further, a plaintiff may only recover compensatory damages under the ADA upon a showing of intentional discrimination. *Perez,* 2011 WL 1226482 at *12 *citing Delano–Pyle v. Victoria County*, 302 F.3d 567, 575 (5th Cir.2002) *citing Carter v. Orleans Parish Pub. Sch.*, 725 F.2d 261, 264 (5th Cir. 1984). "Acts of negligence do not come within the ambit of the ADA." *Id. citing Norman v. TDCJ–ID*, 2007 WL 3037129,

*5 (E.D. Tex. 2007) *citing Foley v. City of Lafayette*, 359 F.3d 925, 931 (7th Cir. 2004).

Here, assuming that plaintiff's status as an amputee makes him a qualified individual, plaintiff nevertheless fails to state a claim under Title II of the ADA – plaintiff does not claim that he was denied the benefits of, or was excluded from, participation in any jail service, program or activity based on his disability. *Hunnicutt*, 2010 WL 1997115 at *2; *see also Perez,* 2011 WL 1226482 at *12.

Furthermore, to the extent that plaintiff complains that he was denied reasonable accommodations in his cell, Title II does not require a prison to make reasonable accommodations for inmates with disabilities. *Perez,* 2011 WL 1226482 at *12 *citing Owens v. O'Dea*, 149 F.3d 1184, 1998 WL 344063, at *3 (6th Cir. 1998); *Douglas*, 567 F.Supp.2d at 889 *citing Owens, supra*.  Title II does not "create a right for a disabled inmate to demand that the prison implement a specific type of service, program, or activity that is not already available or create a right for such inmate to be housed at a specific prison, where alternate services, programs or activities might be available." *Douglas*, 567 F.Supp.2d at 889 *citing Garrett v. Angelone*, 940 F.Supp. 933, 942 (W.D. Va. 1996), *aff'd,* 107 F.3d 865 (4th Cir. 1997); *see also Perez,* 2011 WL 1226482 at *12.

The undersigned is cognizant that *in dicta* the Supreme Court stated that "the alleged deliberate refusal of prison officials to accommodate [a prisoner's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs" may constitute " 'exclu[sion] from participation in or .

22

. . den[ial of] the benefits of' the prison's 'services, programs, or activities . . . .' " *United States v. Georgia*, 546 U.S. 151, 157, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006) *quoting* 42 U.S.C. § 12132) (alteration in original).

However, even if this language could be construed as requiring alterations in plaintiff's cell, plaintiff's claim nevertheless fails. Plaintiff has not shown that his placement in the segregation unit was an act of discrimination.  To the contrary, as set forth above, plaintiff was placed in segregation for his own protection, not for discriminatory reasons.  Finally, as set out above, petitioner is no longer in custody at SMPJ.

Based on the above, plaintiff has failed to state a claim for which relief may be granted under the ADA.

## CONCLUSION AND RECOMMENDATION

For the reasons set forth above;

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).**

In Chambers, Lafayette, Louisiana on March 27, 2012.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

Copy sent:  Judge Doherty
On:  3-27-2012
By:  MBD

24